UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                                         )
TOLEDO R. KELLEY, *et al*.,                     )
                                                         )
                    Plaintiffs,                      )          Civil Action No. 10-2014 (PLF)
                                                         )
         v.                                            )
                                                         )
THE DISTRICT OF COLUMBIA, *et al*.,       )
                                                         )
                    Defendants.                    )
_____)


OPINION

         This matter is before the Court on the defendants' motion to dismiss or, in the

alternative, for summary judgment.  The plaintiffs are Toledo R. Kelley and Anthony Conrad,

two former police officers whose employment with the District of Columbia Metropolitan Police

Department ("MPD") was terminated.  They bring suit against the District of Columbia, Chief of

Police Cathy Lanier, and the former Attorney General of the District of Columbia, Peter Nickles.

Lanier and Nickles are sued in both their official and individual capacities.  The plaintiffs assert

that the defendants unlawfully conspired to deprive them of their constitutional rights, in

violation of 42 U.S.C. § 1985, and that they also deprived them of their civil rights under 42

U.S.C. § 1983, specifically, their Fifth Amendment rights to due process and equal protection.

The defendants move to dismiss the plaintiffs' claims under Rule 12(b)(6) of the Federal Rules

of Civil Procedure, asserting that plaintiffs have failed to plead sufficient facts to state any valid

claim for relief.  For the reasons discussed below, the Court grants the defendants' motion and

dismisses the plaintiffs' claims.

I.  FACTUAL ALLEGATIONS AND PROCEDURAL BACKGROUND

In 2004, the plaintiffs were terminated from their employment with the MPD after allegations of wrongdoing were levied against them and other officers.  Amended Complaint ("Am. Compl.") ¶ 8.  An arbitrator subsequently overturned their terminations, a decision that was later affirmed by the Public Employee Relations Board ("PERB").  *Id.*  The MPD then challenged this finding as to plaintiff Toledo R. Kelley in the Superior Court of the District of Columbia, which upheld the PERB's decision.  *Id.*

According to plaintiffs, the defendants initiated meetings and discussions to "devis[e] a plan to circumvent the law" and bar reinstatement of the plaintiffs and other officers.  Am. Compl. ¶ 9.  This resulted, it is alleged, in the defendants leaking protected personnel information about the plaintiffs and other officers to the media in May of 2008, in order to "sway public opinion in [the defendants'] favor."  *Id.* ¶ 10.  In addition, former Attorney General Nickles allegedly wrote a letter to Chief Lanier, "outlining [a] plan to manufacture and level [a] charge of 'inefficiency'" against the officers.  *Id.* ¶ 11.  In the midst of these events, the United States Attorney's Office contacted the defendants to obtain information in order to evaluate whether the officers' reinstatement might have an impact on pending cases in which the officers may be called to testify.  *Id.* ¶ 12.  The plaintiffs claim that in response, the defendants conveyed a "skewered version of the facts," indicating that the plaintiffs lacked character, integrity, and credibility.  *Id.*  The defendants then asked the U.S. Attorney's Office whether the information they provided would affect the officers' ability to testify in its criminal cases, and the U.S. Attorney responded that "there might be some difficulty."  *Id.* ¶ 13.

Former Attorney General Nickles also sent Chief Lanier a letter that, according to the plaintiffs, made "blatant misrepresentations of fact" and that indicated that his office would

not call the officers as witnesses in pending cases.  Am. Compl. ¶ 13.  The plaintiffs allege that

the defendants levied a charge of "inefficiency" against the plaintiffs and "ordered sham

hearings" with pre-determined adverse results, to serve as a "cover" for the defendants' unlawful

conduct and prevent the officers' reinstatement.  *Id.* ¶¶ 14–15.  In November 2010, the plaintiffs

brought suit against the defendants in this Court.

## II.  ANALYSIS

### A.  *Legal Standard*

Rule 12(b)(6) of the Federal Rules of Civil Procedure allows dismissal of a

complaint if a plaintiff fails "to state a claim upon which relief can be granted."  FED. R. CIV. P.

12(b)(6).  In *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), the Supreme Court noted that

"Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim

showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what

the . . . claim is and the grounds upon which it rests[.]'"  *Id.* at 555 (quoting *Conley v. Gibson*,

355 U.S. 41, 47 (1957)); *see also Erickson v. Pardus*, 551 U.S. 89, 93–94 (2007).  Although

"detailed factual allegations" are not necessary to withstand a Rule 12(b)(6) motion to dismiss,

to provide the "grounds" of "entitle[ment] to relief," a plaintiff must furnish "more than labels

and conclusions" or "a formulaic recitation of the elements of a cause of action."  *Bell Atlantic*

*Corp. v. Twombly*, 550 U.S. at 555; *see also Papasan v. Allain*, 478 U.S. 265, 286 (1986).  While

there is no "probability requirement at the pleading stage," *Bell Atlantic Corp. v. Twombly*, 550

U.S. at 556, "something beyond . . . mere possibility . . . must be alleged[.]"  *Id.* at 557.  The

facts alleged in the complaint "must be enough to raise a right to relief above the speculative

level," *id.* at 555, because Rule 8(a)(2) requires a "showing," rather than a "blanket assertion," of

entitlement to relief.  *Id.* at 555 n.3.  The complaint must be sufficient "to state a claim for relief

that is plausible on its face." *Id.* at 570; *see also Ashcroft v. Iqbal*, 556 U.S. 662 (2009).

On a motion to dismiss under Rule 12(b)(6), the Court "must accept as true all of

the factual allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. at 94; *see also*

*Bell Atlantic Corp. v. Twombly*, 550 U.S. at 555.  The complaint "is construed liberally in the

[plaintiff's] favor, and [the Court should] grant [the plaintiff] the benefit of all inferences that can

be derived from the facts alleged." *Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1276

(D.C.Cir.1994).  Nevertheless, the Court need not accept inferences drawn by the plaintiff if

those inferences are unsupported by facts alleged in the complaint, nor must the Court accept the

plaintiff's legal conclusions.  *See id.*; *Browning v. Clinton*, 292 F.3d 235, 242 (D.C.Cir.2002).

### B.  Section 1985 Conspiracy Claims[1]

The defendants assert that the plaintiffs fail to state a valid conspiracy claim

pursuant to 42 U.S.C. § 1985.  Defs.' Mot. at 6–8.  Specifically, they contend that they cannot be

found liable for conspiracy to violate the plaintiffs' constitutional rights because "the District

and its employees are deemed [to be] a single entity." *Id.* at 7.  The defendants thus invoke the

"intracorporate conspiracy doctrine," which dictates that "there is no conspiracy if the

conspiratorial conduct challenged is essentially a single act by a single corporation acting

---

1       The defendants contend that the plaintiffs have failed to exhaust their administrative remedies as required
by the Comprehensive Merit Personnel Act ("CMPA").  Defs.' Mot. at 11.  Specifically, the defendants assert that
the plaintiffs' administrative proceedings have not been exhausted because they still await the arbitrator's decision,
and because they may seek review of this decision with the PERB and the Superior Court.  *Id.*  Yet even so
employee grievances must typically follow the procedures laid out by the CMPA, "that particular statutory remedy
does not foreclose" a plaintiff from bringing claims arising under the laws of the United States, including actions
pursuant to Section 1983, as this Court has original jurisdiction over such claims.  *Matthews v. District of Columbia*,
675 F. Supp. 2d 180, 185 (D.D.C. 2009).  Exhaustion of administrative remedies under the CMPA is thus not a
prerequisite to filing a complaint based on federal claims like Section 1983.  *Savage v. District of Columbia*, 2004
U.S. Dist. LEXIS 4422, *11-12 (D.D.C. Mar. 19, 2004) (exhaustion of CMPA remedies is not a prerequisite to filing
a Section 1983 complaint); *Crockett v. D.C. Metro. Police Dep't*, 293 F. Supp. 2d 63, 67 (D.D.C. 2003).  The
defendants' argument respecting exhaustion therefore is rejected.

exclusively through its own directors, officers, and employees." *Herrmann v. Moore*, 576 F.2d 453, 459 (2d Cir. 1978). Several circuits have applied the intracorporate conspiracy doctrine in civil rights cases under 42 U.S.C. § 1985 to preclude conspiracy liability for a municipal entity's employees, while other circuits have declined to apply the doctrine in that context. *See Bowie v. Maddox*, 642 F.3d 1122, 1130–31 (D.C. Cir. 2011). The D.C. Circuit has not ruled on the issue. *Id.* at 1130 n.4, 1131. District courts within this Circuit have, however, "consistently . . . applied the intracorporate conspiracy doctrine to Section 1985." *Tabb v. District of Columbia*, 477 F. Supp. 2d 185, 190 (D.D.C.2007) (listing cases).

The intracorporate conspiracy doctrine only applies if the individual defendants were acting within the scope of their shared employment. *Rawlings v. District of Columbia*, 820 F. Supp. 2d 92, 104 (D.D.C. 2011) (citing *Herrmann v. Moore*, 576 F.2d at 459) (no conspiracy arises from what is "essentially a single act by a single corporation acting exclusively through its own directors, officers, and employees, *each acting within the scope of his employment*") (emphasis added); *Brown v. Sim*, 2005 WL 3276190, at *3 (D.D.C. Sept. 30, 2005) ("[E]mployees, *when acting in the scope of their employment*, cannot conspire among themselves.") (quotation omitted) (emphasis added); *James Taylor Trash Removal v. District of Columbia*, 1999 U.S. Dist. LEXIS 13845, at *8 (D.D.C. Sept. 1, 1999) ("D.C. government officials, *acting within the scope of their employment*, are considered members of a single entity for the purposes of § 1985.") (emphasis added). In this case, the defendants held hearings before the MPD to review the decision to remove the plaintiffs, determined that they were "inefficien[t]," and made statements to the media about them. Am Compl. ¶¶ 14–15. Contrary to the plaintiffs' assertions, these activities fell within the scope of the defendants' employment, and the plaintiffs do not provide any other argument as to why the intracorporate conspiracy

doctrine should not apply.  The plaintiffs have thus failed to sufficiently plead the existence of a conspiracy, and such claims therefore must be dismissed.  *See Brown v. Sim*, 2005 U.S. Dist. LEXIS 35415 at *11.

In addition, defendants argue that a separate and independent basis for dismissal is that the plaintiffs fail to allege that the purported conspiracy was motivated by some class-based, invidiously discriminatory animus, which the defendants say is an essential element for this type of claim.  Def's Mot. at 7-8.  In order to make out a claim under 42 U.S.C. § 1985, a plaintiff must allege:  (1) a conspiracy (2) motivated by "some racial, or perhaps otherwise class-based, invidiously discriminatory animus" (3) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws, and (4) an act in furtherance of the conspiracy (5) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States.  *United Bhd. of Carpenters, Local 610 v. Scott*, 463 U.S. 825, 828–29 (1983) (quoting *Griffin v. Breckenridge*, 403 U.S. 88, 102-03 (1971)). Alleging that the defendants were motivated by a class-based invidiously discriminatory animus is required in order "to avoid converting Section 1985 into a general federal tort law claim." *McManus v. District of Columbia*, 530 F. Supp. 2d 46, 75 (D.D.C. 2007) (citing *Bray v. Alexandria Women's Health Clinic*, 506 U.S. 263, 267–68 (1993)); *see also Atherton v. D.C. Office of the Mayor*, 567 3d 672, 688 (D.C. Cir. 2009).

The plaintiffs in this case allege that the defendants entered into an agreement to violate the plaintiffs' constitutional rights, and that by leaking protected information to the media, levying a charge of "inefficiency" against the plaintiffs, and orchestrating "sham hearings" to cover their actions, the defendants deprived the plaintiffs of such rights.  Am.

Compl. ¶¶ 22–23.  The plaintiffs do not allege that the defendants were motivated by a class-based, invidiously discriminatory animus.  In other words, the plaintiffs do not allege that they belong to a protected class — such as one based on race, national origin, or gender — nor do they allege that the defendants' alleged conspiracy was driven by membership in such class.  *See McManus v. District of Columbia*, 530 F. Supp. 2d at 75.  In the absence of pleading this essential element, the plaintiffs' allegations are insufficient to state a valid Section 1985 claim.  *See Atherton v. D.C. Office of the Mayor*, 567 F.3d at 688–89 (affirming the district court's dismissal of Section 1985 claim because plaintiff failed to allege that defendants' conspiracy was motivated by class-based, invidiously discriminatory animus).

        The plaintiffs argue, however, that alleging a discriminatory animus is not required for conspiracies involving public officials, asserting that discriminatory animus is an essential element only when the conspiracy consists of private as opposed to state actors.  Pls' Opp'n. at 11.  This strategy "has been tried in several other circuits and has uniformly been found wanting."  *Aulson v. Blanchard*, 83 F.3d 1, 3 (1st Cir. 1996).  *See, e.g., Bisbee v. Bey*, 39 F.3d 1096, 1102 (10th Cir. 1994); *Haverstick Enter., Inc. v. Fin. Fed. Credit, Inc.*, 32 F.3d 989, 994 (6th Cir. 1994); *Gagliardi v. Vill. of Pawling*, 18 F.3d 188, 194 (2d Cir. 1994); *Burrell v. Bd. of Tr.*, 970 F.2d 785, 794 (11th Cir. 1992).  Section 1985 "affords no principled basis for distinguishing between public and private conspiracies."  *Aulson v. Blanchard*, 83 F.3d at 4; *see id*. at 3 (noting that "the class-based animus required to ground a private right of action under the statute applies to conspiracies allegedly involving public officials in the same way as it applies to all other conspiracies").  Thus, because the plaintiffs fail to allege that the conspiracy was motivated by a class-based, invidiously discriminatory animus, and because they do not offer

any plausible reason as to why the intracorporate conspiracy doctrine should not apply, they do not state any viable Section 1985 conspiracy claims.  The Court therefore dismisses such claims.

### C.  Section 1983 Claims

To state a claim for relief in an action brought under Section 1983, the plaintiffs must establish that they were deprived of "a right secured by the Constitution or laws of the United States, and that the alleged deprivation was committed under color of state law."  *Am. Mfrs. Mut. Ins. Co. v. Sullivan,* 526 U.S. 40, 49–50 (1999).  The plaintiffs in this case allege that they were denied their rights to equal protection and due process of law, as guaranteed by the Fifth Amendment.  Am. Compl. ¶¶ 14–15.[2]

### 1.  Equal Protection

The equal protection principles embodied in the Due Process Clause of the Fifth Amendment direct that "all persons similarly situated should be treated alike."  *Brandon v. D.C. Bd. of Parole*, 823 F.2d 644, 650 (D.C. Cir. 1987) (quoting *Cleburne v. Cleburne Living Ctr., Inc.*, 473 U.S. 432, 439 (1985)).  There are generally two means by which a plaintiff can allege an equal protection violation.  An individual may claim that he or she received differential treatment by the government due to membership in a protected class, such as one based on race, national origin, or gender.  *Jones v. Helms*, 452 U.S. 412, 424 n.23 (1981).  As already noted, the plaintiffs do not allege that they were terminated because of their membership in a protected class.  Alternatively, if an individual is not a member of a protected class but is arbitrarily and intentionally treated differently from others who are similarly situated — and the government

---

2       Although the Fifth Amendment does not contain an equal protection clause, the Supreme Court has held that equal protection principles are embodied in the Due Process Clause of the Fifth Amendment and that they apply to the District of Columbia.  *Bolling v. Sharpe*, 347 U.S. 497, 499 (1954); *Brandon v. D.C. Bd. of Parole*, 823 F.2d 644, 650 (D.C. Cir. 1987).

has no rational basis for the disparity — the individual may qualify as a "class of one" and be entitled to pursue an equal protection claim. *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564–65 (2000).   According to the plaintiffs, their protected class consists of officers who were subjected to illegal conduct, whose terminations were recently overturned by arbitrators, who were ordered back to work and made whole, and who were deprived of a property interest in the form of their jobs by defendants who acted "knowingly subverting the law, ignoring the law, and violating the law." Pls.' Opp'n. at 12.   The plaintiffs' argument fails.

The Supreme Court has recently held that the "class of one" theory of equal protection does not apply when the government acts as an employer because "government offices could not function if every employment decision became a constitutional matter." *Engquist v. Or. Dep't of Agric.*, 553 U.S. 591, 598–99 (2008).   While the Equal Protection Clause applies to public employers when they make decisions based on an employee's protected class of race, gender, or the like, by contrast, a "class of one" theory of equal protection "has no application in the public employment context." *Id.* at 607; *see also Wilson v. Libby*, 535 F.3d 697, 721 (D.C. Cir. 2008).   Ratifying a "class of one" theory in public employment would "constitutionalize the employee grievance[, and thus] the federal court is not the appropriate forum . . . to review the multitude of personnel decisions [that are] made daily by public agencies." *Engquist v. Or. Dep't of Agric.*, 553 U.S. at 609 (internal quotation marks and citations omitted).   Because there is no place for a "class of one" equal protection claim in the public employment context, the plaintiffs do not state a viable equal protection claim pursuant to Section 1983.   Such claims therefore are dismissed.

2.  Substantive Due Process

According to the defendants, the plaintiffs cannot make out a substantive due process claim because they do not sufficiently allege that they were deprived of any fundamental rights. Defs.' Mot. at 6.  Because there is no fundamental right to government employment, the defendants assert, the plaintiffs' termination does not violate the substantive component of the Due Process Clause.  *Id.*

The substantive component of the Due Process Clause protects fundamental rights, or those that are "implicit in the concept of ordered liberty."  *Palko v. Connecticut*, 302 U.S. 319, 325 (1937).  Fundamental rights are created only by the Constitution, and enjoy protection against "certain government actions[,] regardless of the fairness of the procedures used to implement them."  *Daniels v. Williams*, 474 U.S. 327, 331 (1986).  It is established that there is no fundamental right to government employment.  *Am. Fed'n of Gov't Emp. v. United States*, 330 F.3d 513, 523 (D.C. Cir.   2003) (citing *United Bldg. & Constr. Trades Council v. Mayor & Council of Camden,* 465 U.S. 208, 219 (1984)).

The plaintiffs allege that they were deprived of their right to return to their employment after being terminated.  *See generally* Am. Compl.  Because they lack a fundamental right to such employment, however, their claim does not enjoy substantive due process protection.  *Am. Fed'n of Gov't Emp. v. United States*, 330 F.3d at 523 (determining that public employees did not make out a substantive due process violation because there is no fundamental right to government employment).  Because the plaintiffs do not sufficiently plead the deprivation of a fundamental right, they cannot state a plausible substantive due process claim.  These claims therefore are dismissed.

10

3.  Procedural Due Process

The Due Process Clause of the Fifth Amendment requires that no person be deprived of his or her property without due process of law.  *Mathews v. Eldridge*, 424 U.S. 319, 332–33 (1976).  Public employees who retain a property interest in their employment have a right to procedural due process. *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 538 (1985).[3]  The fundamental requirement of due process is the opportunity to be heard "at a meaningful time and in a meaningful manner."  *Mathews v. Eldridge*, 424 U.S. at 333 (citation omitted).  The Fifth Amendment only requires that a person receive his or her due process, not every procedural device that he or she may claim or desire.  *Kropat v. F.A.A.*, 162 F.3d 129, 132 (D.C. Cir. 1998) (citation omitted).  Furthermore, demonstrating a lack of opportunity to be heard is an essential element of a procedural due process claim.  *McManus v. District of Columbia*, 530 F. Supp. 2d at 73.  The plaintiff must identify the process that was due but denied. *Doe v. District of Columbia*, 93 F.3d 861, 869–70 (D.C. Cir. 1996).  "Due process is flexible and calls for such procedural protections as the particular situation demands." *Mathews v. Eldridge*, 424 U.S. at 334 (citing *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972)).

In this case, the plaintiffs state that the defendants held "sham hearings" before the MPD with pre-determined results.  Pls.' Opp'n at 14.  Yet the plaintiffs also acknowledge that after they were terminated, their grievance went before an arbitrator, then before the PERB, and then before the Superior Court, all of whom found in the plaintiffs' favor.  Am. Compl. ¶ 8.

---

3        Not all public employees have a property interest in their employment, and the plaintiffs do not allege that they have one.  *O'Donnell v. Barry*, 148 F.3d 1126, 1139 (D.C. Cir. (1998)).  The defendants do not challenge the existence of one, however.  Thus, for the sake of this analysis, the Court accepts as true those facts that the plaintiffs do allege, and accordingly draws in their favor the reasonable inference that they retain such a property interest.  *See Vila v. Inter-Am. Inv. Corp.*, 570 F.3d 274, 284 (D.C. Cir. 2009).

Even if the plaintiffs' claim that they received "sham hearings" is accepted as true, the fact that their grievance was later heard by an arbitrator is, in itself, sufficient to ensure that they received due process. *See Hughes v. City of Bethlehem*, 294 F. App'x 701, 705 (3d Cir. 2008) (determining that a terminated public employee failed to make out a procedural due process claim under Section 1983 because there was an adequate grievance-arbitration procedure in place and she availed herself of it); *Dykes v. Se. Penn. Transp. Auth.*, 68 F.3d 1564, 1572 (3d Cir. 1995) (holding that because a public employee could have requested arbitration after being terminated, he was "assur[ed] of the due process to which he was entitled[,]" and could not sufficiently allege a procedural due process claim pursuant to Section 1983); *see also Armstrong v. Meyers*, 964 F.2d 948, 951 (9th Cir. 1992).  The right to arbitrate provides "essentially the same due process safeguards [that are] available through an unbiased hearing," and the value of any additional or substitute procedures is small. *Jackson v. Temple Univ.*, 721 F.2d 931, 933 n.2 (3d Cir.1983); *Dykes v. Se. Penn. Transp. Auth.*, 68 F.3d at 1572.  Indeed, arbitration procedures are a "universally accepted method of resolving employment disputes." *Armstrong v. Meyers*, 964 F.2d at 950.

Furthermore, the process in place for review of the plaintiffs' grievance, which includes the ability to be heard before three separate decision-makers, one of which is an Article I federal court that serves as the "state" trial court of general jurisdiction in the District of Columbia, assures that the plaintiffs received procedural due process. *Altman v. Hurst*, 734 F.2d 1240, 1242–43 (7th Cir. 1984) (stating that state court remedies provided sufficient procedural due process relief for purposes of Section 1983 when a police officer was deprived of his property interest) (discussing *Parratt v. Taylor*, 451 U.S. 527 (1981)); *Windstead v. District of Columbia*, 596 F. Supp. 2d 50, 52–53 (D.D.C. 2009) (determining that because alternative state

12

remedies were available to the plaintiffs, they did not suffer a violation of procedural due

process); *Crockett v. D.C. Metro Police Dep't*, 293 F. Supp. 2d at 68.  Indeed, the fact that each

decision-maker previously found in favor of reinstatement indicates that these opportunities to

be heard have been meaningful, instead of being contrived or biased against the plaintiffs.  *See*

Am. Compl. ¶ 8.[4]  Accordingly, because the plaintiffs do not sufficiently allege that they were

deprived of a meaningful opportunity to be heard, they cannot make out a viable procedural due

process claim.  Such claims therefore are dismissed.[5]

## IV.  CONCLUSION

For the foregoing reasons, the Court grants the defendants' motion to dismiss.  An

Order consistent with this Opinion shall be issued this same day.


/s/_____
PAUL L. FRIEDMAN
United States District Judge

DATE:   September 28, 2012

---

[4]      The defendants notably assert that an arbitrator has already ordered plaintiff Conrad to be reinstated.  Defs.'
Reply at 12 n.2.  Neither party has informed the Court of the status of plaintiff Kelley.

[5]      In addition to the other arguments that the defendants put forward, they contend that the Court should
dismiss all claims against the Chief of Police and the former Attorney General because they are entitled to qualified
immunity.  Defs.' Mot. at 13.  Because the plaintiffs' claims have been dismissed on other grounds, however, these
arguments do not require discussion.